UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
:
LIDDLE & ROBINSON, L.L.P.,                :
:
              Plaintiff,      :
:   1:08 CV 02965 (PKL)
    -against-                         :
:
ROBERT Y. GARRETT, IV             :
JAY F. LUBY,                              :
:
              Defendants.    :
---------------------------------------------------------------- x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

      Plaintiff, Liddle & Robinson, L.L.P. (hereinafter "L&R"), respectfully submits this Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint filed pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the Court should deny Defendants' motion.

### PRELIMINARY STATEMENT

      Plaintiff, L&R, seeks legal fees in connection with work performed for defendants Robert Y. Garrett IV ("Garrett") and Jay F. Luby ("Luby"). Defendants both signed retainer agreements with plaintiff agreeing to the payment of hourly fees up to a certain threshold as well as a contingency fee for any recovery achieved.

      On February 7, 2007, plaintiff and defendants had a meeting at which it became clear to plaintiff that defendants had terminated or constructively terminated plaintiff's representation of defendants. Plaintiff understood that defendants' comments during this meeting were both a termination of its representation and an attempt to avoid paying plaintiff's fees.

Plaintiff sent defendants a letter confirming its understanding and asserting plaintiff's right to be paid based on the retainer agreement. Defendants' current attempt to re-classify their termination of plaintiff's representation of them is yet another attempt to avoid paying for plaintiff's hard work and efforts on their behalf.

## FACTS

In August 2001, Liddle & Robinson, L.L.P, began representing defendants in connection with an employment-related dispute with related entities, Charles Schwab & Co., Inc, The Charles Schwab Corporation, UST Securities Corp., United States Trust Company of New York, and the U.S. Trust Company of New York (jointly "Charles Schwab"). Amended Complaint ¶ 4.

Defendant Luby signed a retainer agreement dated September 10, 2001 with plaintiff and Defendant Garrett signed a retainer agreement dated September 11, 2001. Id. at ¶¶ 5, 7. Luby agreed to pay plaintiff, among other things, its hourly fees for the first $20,000 of billings and 75% of plaintiff's hourly rates thereafter with a cap of $48,000 on hourly fees if plaintiff commenced an arbitration or litigation on his behalf as well as contingency fees on the amounts recovered after the commencement of litigation. Id. ¶ 6. Garrett agreed to a similar structure, with hourly fees to the first $30,000 of billings with a cap of $72,000 if plaintiff commenced an arbitration or litigation on his behalf as well as contingency fees on the amounts recovered after the commencement of litigation. Id. at ¶ 8.

Defendants both entered into supplemental agreements with plaintiff: Luby on November 16, 2001 and Garrett on November 23, 2001. Id. at ¶¶ 9, 10. Both defendants agreed to pay plaintiff 10% of all amounts recovered before the commencement of an arbitration or other litigation, with the total of plaintiff's fees under this provision, plus plaintiff's hourly fees under the

2

September 6, 2001 agreement not to exceed 15% of the recovery. The agreement provided that, if the plaintiff was due a contingency fee under its terms, "we will agree that such percentage shall be allocated, between this firm Rogin, Nassau, pro rata based upon the number of hours recorded, but only with regard to work they do at our request, or that we agree has added value or obviated our need to do the same work." Id. at ¶¶ 10, 12.

Plaintiff engaged in extensive legal services on defendants' behalf, including, among other things, representing defendants in mediation, performing legal research and drafting a statement of claim to commence an arbitration. Id. at ¶ 13.

By January 10, 2002 Luby incurred total expenses of $21,419.50, which he paid without question or contention. Id. at ¶¶ 14, 15. By January 10, 2002, Garrett incurred bills in the amount of $22,057.18, which he did not challenge, but also did not pay. Id. at ¶¶ 16, 17.

On February 7, 2002 defendants met with attorneys from plaintiff at plaintiff's office, where the defendants <u>terminated or constructively terminated</u> plaintiff's representation of them. Id. at ¶¶ 18, 19. Plaintiff's exhibit E clearly states, "It is clear from our meeting yesterday that you in fact, or constructively, terminated our relationship with you." Amended Complaint, Exhibit E. Plaintiff's letter also makes clear that plaintiff believed that the situation had become "untenable" because the defendants were actively attempting to avoid their responsibility to pay their fees. Amended Complaint, Exhibit E. Plaintiff also confirmed in this letter that plaintiff was "shocked" to learn that defendants had engaged the services of another attorney, Paul Zolan, Esq. Id. Finally, plaintiff confirmed that "our agreements under which Liddle & Robinson receives a percentage of any amounts you recover, still stand." Id.

On February 8, 2002 plaintiff mailed a bill to Garrett for a total outstanding balance of $39,485.03 and to Luby for $14,238.50. Amended Complaint, ¶¶ 21, 22. On March 6, 2002,

3

plaintiff sent both defendants final reduced bills, Garrett in the amount of $38,934.26 and Luby in the amount of $13,687.72. Id. at ¶¶ 23, 24. Neither defendants paid anything. Id.

## ARGUMENT

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must assume the truth of the plaintiff's allegations, and draw all reasonable inferences in favor of the plaintiff. See Jackson National Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994). A complaint thus may be properly dismissed "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." McNulty v. New York Dept. of Finance, 941 F. Supp. 452, 454 (S.D.N.Y. 1996) (citing Gagliardi v. Village of Pawling, 18 F.3d 188, 191 (2d Cir. 1994)). The plaintiff "need provide only a short and plain statement of the claim showing that the pleader is entitled to relief." Hartzog v. Reebok Intern. Ltd., 77 F. Supp.2d 478, 479 (S.D.N.Y. 1999) (citing FRCP 8(a)). "Indeed, the pleading of evidence should be avoided." Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 124 (2d Cir. 1991); see also Hartzog, supra ("An evidentiary standard is not a proper measure of whether a complaint fails to state a claim"). The issue for the Court thus is not whether a plaintiff will ultimately prevail on its claims, but whether it is entitled to offer evidence in support of the allegations made. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).

The court should deny defendants' motion to dismiss based on the fact that the parties disagree on a fundamental issue of fact regarding the termination of plaintiff's representation of defendants: whether defendants discharged plaintiff, or whether plaintiff

withdrew representation. Based on the facts, as pled, and drawing all reasonable inferences in favor of the plaintiff, plaintiff is entitled to present evidence at trial that the defendants in fact terminated plaintiff's representation. According to the pleading requirements of FRCP 8(a), plaintiff is not required to delve into the details of the termination, only to plead that the termination occurred and that the plaintiff is entitled to relief based on his performance. Plaintiff pled that defendants "terminated or constructively terminated" plaintiff's representation of defendants and that plaintiff had performed substantial legal work for defendants. <u>Amended Complaint</u> ¶¶ 13, 19.

Even though "pleading of evidence should be avoided", the February 8, 2002 letter attached to plaintiff's Amended Complaint, which defendants deliberately try to misconstrue, directly contradicts defendants' assertions. Plaintiff informed defendants in this letter of its belief that defendants had terminated or constructively terminated plaintiff's representations of them. Furthermore, defendants had already engaged other counsel by this date, and informed plaintiff of this engagement. <u>Amended Complaint</u>, Exhibit E. Defendants' attempt to now claim that plaintiff "unilaterally" withdrew its representation is disingenuous and false. Defendants try to use plaintiff's acknowledgment that the situation was "untenable" as "proof" of plaintiff's alleged withdrawal. Defendants are aware now, as they were then, that plaintiff's statement was in reference to plaintiff's belief that defendants were attempting to avoid paying their fees. Finally, plaintiff further informed defendants of its belief that it could settle the case for a certain amount, "based on the assumption Liddle & Robinson would be representing you and that [Jeff Liddle] would be trying the case." This statement indicates a further willingness on the part of plaintiff to represent defendants should defendants dispute plaintiff's understanding that defendants had terminated or constructively terminated plaintiff's

representation of defendants. Evidently, defendants chose not to return to plaintiff for representation and plaintiff is entitled to find and present evidence in support of this position. Plaintiff is not, as defendants insinuate, in possession of all the relevant facts, and is therefore entitled to discovery surrounding this termination.

New York courts have not ruled on what an attorney may recover in a blended agreement (i.e. partial hourly, partial contingency). "The court's power of supervision [for retainer agreements] is limited to granting relief from and proscribing retainers which are unconscionable, fraudulent or illegal." Botein, Hays, Sklar & Herzberg v. Polymetrics International, Inc. 81 Misc.2d 398, 400 (N.Y. Civ. Ct. 1975). In the absence of these elements the contract "must be enforced according to its terms." Id. (citing Section 747 of the Judiciary Law). "The statute gives the right to an attorney and client to make a contract as to the former's compensation, and it is a matter of no importance, when the contract is brought under review, what the compensation agreed to be paid is, provided the contract is legal in other respects." Id. In this case, Garrett and Luby agreed to the blended contract and have not contested the validity of the contract.

While a client may discharge an attorney at any time, with or without cause, a discharged attorney may recover the "fair and reasonable value of the services rendered, determined at the time of discharge and computed on the basis of quantum meruit." Cohen v. Grainger, Tesoriero & Bell, et al., 81 N.Y.2d 655, 658 (N.Y. 1993). This amount can be more or less than the amount provided for in the contract or retainer agreement. Lai Ling Cheng v. Mondansky Leasing Co., Inc. 73 N.Y.2d 454, 458 (N.Y. 1989). Quantum meruit is not a direct calculation of attorneys fees. To determine the value of the services rendered courts may take into account the contingency fee, the nature of the litigation, the difficulty of the case, the

amount of money involved, the results achieved and amounts charged for similar services in the same locality. Smith v. Boscov's Department Store. 192 A.D.2d 949, 950-1 (3$^d$ Dep't 1993). "This flexibility would accommodate the situation where an incoming attorney, for example, capitalizes on the groundwork the predecessor laid and by doing little obtains a settlement offer two or three times greater than the offer to the predecessor." Martelli v. Barclay, 2004 WL 2339804 at *2 (2004). This is such a case, where the incoming attorneys capitalized on the work done by plaintiff, which included a mediation and serious settlement discussions.

Even though a discharged attorney may typically be awarded fees in quantum meruit, if the client and the attorney agree, the attorney may receive a fee based on the percentage of recovery. Lai Ling Cheng, 73 N.Y.2d at 458 (citing Reubenbaum v. B&H Express v. Glicker & Doynow, (1st Dep't 1958)). In this case, defendants and plaintiff agreed, pursuant to a contract (the retainer arrangement) that Liddle & Robinson would receive a portion of the contingency fees. The February 7, 2002 letter to defendants further states, "our agreements under which Liddle & Robinson receives a percentage of any amounts you recover, still stand." Defendants did not dispute the validity of this agreement or write to state that they considered the agreements void. Therefore, pursuant to the rules of contract, the defendants and plaintiff agreed between them that defendants were entitled to receive a fee based on the percentage of recovery.

Defendants have incorrectly stated in their Motion to Dismiss that "there are <u>only</u> three separate and distinct remedies available even to an attorney discharged without cause to cover the value of his legal services" and cited to Butler, Fitzgerald & Potter v. Gelmin, 235 A.D.2d 218 (App. Div., 2nd Dep't, 1997) (emphasis added). Defendants have incorrectly added the word "only" to their analysis. The Butler court actually states that there "are three separate and distinct remedies which are available to a discharged attorney to recover the value of his

7

legal services." The court's statement does not contain the limitation of the word "only." As stated above, there do not appear to be any cases that deal with a blended contingency agreement and therefore a new legal solution is needed to deal with these specific contracts.

Defendants are doing everything within their power to shift the blame of their termination of plaintiff's representation of them, which appeared to plaintiff to be a tactic to avoid paying their legal fees, and avoid paying the terms of their agreement with plaintiff. Plaintiff is entitled to present to the court the facts that show that defendants "terminated or constructively terminated" plaintiff's representation of them and to recover the reasonable value of the fees, including the portion of the contingency attributed to plaintiff's hard efforts and work.

## CONCLUSION

For the reasons set forth above, plaintiff, Liddle & Robinson, respectfully requests that the Court deny Defendants' motion in its entirety.

Dated: July 25, 2008
      New York, New York

                               LIDDLE & ROBINSON, L.L.P.

                               By: *James A. Batson*
                                   James A. Batson
                               *Attorneys for the Plaintiff*
                               800 Third Avenue
                               New York, New York  10022
                               (212) 687-8500
                               jbatson@liddlerobinson.com