UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7|1|10

LIDDLE & ROBINSON, LLP,

        Plaintiff,

 - against -

ROBERT Y. GARRETT, IV and JAY
F. LUBY,

        Defendants.

**OPINION AND ORDER**

08 Civ. 2965  (PKL)

**APPEARANCES**

LIDDLE & ROBINSON, LLP
James A. Batson
800 Third Avenue
New York, NY 10022

Attorney for Plaintiff

LAW OFFICES OF THOMAS M. MULLANEY
Thomas M. Mullaney
708 Third Avenue, Suite 2500
New York, NY 10017

Attorney for Defendants

1

**LEISURE**, **District Judge**:

This is a diversity action for quantum meruit, breach of contract, and account stated. Defendants, Robert Y. Garrett, IV ("Garrett") and Jay F. Luby ("Luby") move pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss plaintiff's, Liddle & Robinson, LLP's ("Liddle"), Amended Complaint in its entirety. For the reasons stated below, defendants' motion to dismiss plaintiff's Amended Complaint is DENIED IN PART and GRANTED IN PART.

**BACKGROUND**

## I. The Parties' Retainer Agreements

The following facts are taken from the pleadings and do not constitute the findings of the Court. Liddle, a limited liability partnership engaged in the practice of law, maintains its place of business in New York. (Am. Compl. ¶ 1.) Garrett resides in New Jersey and Luby resides in Massachusetts. (Id. ¶¶ 2-3.)

Liddle began representing Garrett and Luby in August 2001 in connection with an employment-related dispute. (Id. ¶ 4.) On September 10, 2001, Luby signed a written agreement, dated September 6, 2001, with Liddle ("Luby Agreement"). (Id. ¶ 5 & Ex. A.) Pursuant to the Agreement, Luby agreed to pay Liddle an hourly fee for the first $20,000 of billing and 75% of Liddle's

hourly rates thereafter, with a cap of $48,000 on hourly fees if
Liddle commenced an arbitration or litigation on Luby's behalf.
(Id. ¶ 6 & Ex. A at 1.)  The Luby Agreement also contained a
contingency fee provision in the event that Liddle "achieve[s] a
recovery on [Luby's] behalf, whether by way of settlement,
award, judgment, verdict or otherwise."  (Id. Ex. A at 1.)  On
November 16, 2001, Luby signed a written supplemental agreement
("Luby Supplemental Agreement"), agreeing to pay Liddle "10% of
all recovery . . . recovered before the commencement of an
arbitration or other litigation" but the total of this
contingency fee plus Liddle's fees under the Luby Agreement
"shall not exceed 15% of the recovery."  (Id. ¶¶ 9-10 & Ex. C.)

     On September 11, 2001, Garrett signed a written agreement,
dated September 6, 2001, with Liddle ("Garrett Agreement").
(Id. ¶ 7 & Ex. B.)  Pursuant to the Agreement, Garrett agreed to
pay Liddle its hourly fee for the first $30,000 of billing and
at 75% of Liddle's hourly rates thereafter, with a cap of
$72,000 on hourly fees if Liddle commenced an arbitration or
litigation on Garrett's behalf.  (Id. ¶ 8 & Ex. B at 1.)  The
Garrett Agreement also contained a contingency fee provision in
the event that Liddle "achieve[s] a recovery on [Garrett's]
behalf, whether by way of settlement, award, judgment, verdict
or otherwise."  (Id. Ex. B at 1.)  On November 23, 2001, Garrett
signed a written supplemental agreement ("Garrett Supplemental

Agreement"), agreeing to pay Liddle "10% of all recovery . . . recovered before the commencement of an arbitration or other litigation" but the total of this contingency fee plus Liddle's fees under the Garrett Agreement "shall not exceed 15% of the recovery."  (Id. ¶¶ 11-12 & Ex. D.)

Pursuant to these agreements, Liddle "rendered extensive legal services" on Luby's and Garrett's behalf, "including, among other things, representing defendants in a mediation, performing legal research and drafting a statement of claim to commence an arbitration."  (Id. ¶ 13.)  Liddle mailed legal bills to Luby on September 30, 2001, October 3, 2001, November 14, 2001, December 10, 2001, and January 10, 2002, for a total of $21,419.50 ($19,554.10 in fees and $1865.40 in expenses). (Id. ¶ 14.)  Luby paid these bills in full without questioning or challenging them.  (Id. ¶ 15.)  Liddle mailed legal bills to Garrett on September 19, 2001, October 2, 2001, November 8, 2001, December 10, 2001, and January 10, 2002, for a total of $22,057.18 ($20,158.85 in fees and $1898.33 in expenses).  (Id. ¶ 16.)  Garrett made no payments towards these bills, but neither questioned nor challenged them.  (Id. ¶ 17.)

On February 2, 2002, Luby and Garrett met with attorneys from Liddle at Liddle's offices.  (Id. ¶ 18.)  During this meeting, Luby and Garrett purportedly "terminated or constructively terminated" Liddle's representation of them.

4

(Id. ¶ 19.)  By letter dated February 8, 2002, Liddle informed Luby and Garrett that they still were responsible for the attorneys' fees under their agreements and that Liddle still was entitled to receive a percentage of any amounts recovered.  (Id. ¶ 20 & Ex. E.)

On February 8, 2002, Liddle mailed a bill to Luby for an additional $13,704.55 in fees and $533.95 in expenses, for a total outstanding balance of $14,238.50.  (Id. ¶ 22.)  On March 7, 2002, Liddle sent Luby an adjusted bill reflecting additional expenses and a refund of certain expenses, reducing Luby's total balance to $13,687.72.  (Id. ¶ 24.)  Liddle's legal services for Luby, therefore, totaled $33,258.65 in fees and $1848.57 in expenses, for a grand total of $35,107.22, of which Luby's outstanding balance was $13,687.72.  (Id.)

On February 8, 2002, Liddle mailed a bill to Garrett for an additional $16,893.89 in fees and $533.96 in expenses, for a total outstanding balance of $39,485.03.  (Id. ¶ 21.)  On March 6, 2002, Liddle sent Garrett an adjusted bill reflecting additional expenses and a refund of certain expenses, reducing Garrett's total balance to $38,934.26.  (Id. ¶ 23.)  Liddle's legal services for Garrett, therefore, totaled $37,052.74 in fees and $1881.52 in expenses, for a grand total of $38,934.26, of which Garrett "never paid anything."  (Id.)

5

Liddle believes that in or about July 2002, Luby and
Garrett "settled their dispute and were paid substantial sums."
(Id. ¶ 25.)  Following their purported settlement, neither Luby
nor Garrett paid Liddle any additional fees or expenses and have
failed or refused to pay Liddle for services rendered despite
their written agreements and Liddle's demand for payment.  (Id.
¶¶ 26-27.)

On May 22, 2008, Liddle filed an Amended Complaint,
alleging quantum meruit, breach of contract, and account stated
against each defendant.  (Id. ¶¶ 28-42.)  Liddle attaches to its
Amended Complaint five exhibits-Exhibit A, the Luby Agreement;
Exhibit B, the Garrett Agreement; Exhibit C, the Luby
Supplemental Agreement; Exhibit D, the Garrett Supplemental
Agreement; and Exhibit E, the February 8, 2002 letter from
Liddle to Luby and Garrett discussing Luby's and Garrett's
responsibility for Liddle's attorneys' fees.[1]  Liddle seeks
damages against Luby in the amount of $13,687.72, as well as the
amount of contingency fees under the Luby Agreement and
Supplemental Agreement.  (Id. ¶¶ 31, 35, 40-41.)  Liddle seeks

---

[1] In deciding the instant motion, the Court treats Liddle's five exhibits as
part of the pleadings because they were attached to the Amended Complaint.
See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (holding
that pleadings include "'any written instrument attached to [a complaint] as
an exhibit'" (quoting Int'l Audiotext Network, Inc. v. AT & T, 62 F.3d 69, 72
(2d Cir. 1995)); see also Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nig.,
265 F.R.D. 106, 123 (S.D.N.Y. 2010) (Leisure, J.).

damages against Garrett in the amount of $38,934.26, as well as the amount of contingency fees under the Garrett Agreement and Supplemental Agreement.  (Id. ¶¶ 29, 33, 37-38.)

## II.   The Instant Motion to Dismiss

Luby and Garrett move to dismiss Liddle's Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6).  (See Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss Pl.'s Am. Compl. ("Defs.' Mem.") 1.)  Luby and Garrett contend that the Amended Complaint should be dismissed as a matter of law because "Jeffrey L. Liddle, a name[d] partner in the Plaintiff firm . . . abruptly terminated his firm's attorney-client relationship with Defendants."  (Id. 1.)  Luby and Garrett further argue that "even if [Liddle] had pled that it was terminated by Defendants without cause, [Liddle] still could not maintain its causes of action for breach of contract and account stated . . . [because] New York law permits exclusively a quantum meruit claim in a plenary action for the recovery of attorneys' fees."  (Id. (emphasis in original).)

## DISCUSSION

The Court first addresses the standard for a motion to dismiss under Rule 12(b)(6).  Next, the Court analyzes whether the Amended Complaint properly states a claim for quantum

meruit, breach of contract, and account stated under New York law.

## I. Rule 12(b)(6)

Luby and Garrett move to dismiss Liddle's Amended Complaint for failure to state a claim upon which relief can be granted. (Id.)  On a motion to dismiss, the Court considers "all 'well-pleaded factual allegations' to be true, [to] 'determine whether they plausibly give rise to an entitlement to relief.'"  Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)).  In Iqbal, the Supreme Court set out a two-pronged analysis to determine whether pleadings meet this plausibility standard.  First, a court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Iqbal, 129 S. Ct. at 1950; see also United States v. Lloyds TSB Bank PLC, 639 F. Supp. 2d 326, 338-39 (S.D.N.Y. 2009) (same).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Iqbal, 129 S. Ct. at 1950.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id.; see also Lloyds TSB, 639 F. Supp. 2d at 339

(same).   "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   Iqbal, 129 S. Ct. at 1950; S. Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009) (Kearse, J.) (same).

Where a complaint fails to plead a plausible claim for relief, a Court may grant leave to amend.   See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009).   Leave to amend need not be granted, however, where the proposed amendment would be futile.   Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 18 (2d Cir. 1997) (Kearse, J.).   Also, "'[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"   Holmes, 568 F.3d at 334 (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)).

The Court now turns to the Amended Complaint to determine whether the pleadings state a claim for quantum meruit, breach of contract, and account stated under New York Law and, if not, whether leave to amend is appropriate.

**II.   Quantum Meruit**

Liddle's first and second causes of action plead claims for
quantum meruit against Garrett and Luby, respectively, "for the
legal services rendered based on, among other things, the hourly
fees owed to [Liddle] by defendant[s] . . ., and the amount that
the contingency fees would be under defendant[s'] . . . retainer
agreement[s]."  (Am. Compl. ¶¶ 28-31.)  Luby and Garrett argue
that Liddle fails to state a cognizable claim under Rule
12(b)(6) because Liddle's "unilateral resignation precludes any
recovery from Defendants in a plenary action under any theory,"
including quantum meruit.  (Defs.' Mem. 5.)


A. Legal Standard

Under New York law, to state a claim for quantum
meruit, a plaintiff must plead "'(1) the performance of services
in good faith, (2) the acceptance of the services by the person
to whom they are rendered, (3) an expectation of compensation
therefor, and (4) the reasonable value of the services.'"
Leibowitz v. Cornell Univ., 584 F.3d 487, 509 (2d Cir. 2009)
(quoting Mid-Hudson Catskill Rural Migrant Ministry, Inc. v.
Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (Sotomayor,
J.)); see also Gould v. Lightstone Value Plus Real Estate Inv.
Trust, Inc., 301 F. App'x 97, 99 (2d Cir. 2008); Compagnia
Importazioni Esportazioni Rapresentanze v. L-3 Commc'ns Corp.,

No. 06 Civ. 3157, 2007 WL 2244062, at *7 (S.D.N.Y. July 31, 2007).

## B. Application

The Court holds that Liddle properly articulates a claim for quantum meruit.  Liddle pleads in its Amended Complaint the first element of a quantum meruit claim-the performance of legal services in good faith-by stating that Liddle "rendered extensive legal services on defendants' behalf including . . . representing defendants in a mediation, performing legal research and drafting a statement of claim to commence an arbitration."  (Am. Compl. ¶ 13.)  Because Liddle pleads that it engaged in legal services "on defendants' behalf" and because neither Luby nor Garrett contend that they objected to, or otherwise failed to accept, Liddle's legal services, Liddle sufficiently pleads the second element of quantum meruit-acceptance of legal services by Luby and Garrett.  (Id.)

Liddle's separate retainer agreements with Luby and Garrett, which specify the fees owed to Liddle in exchange for its legal services, satisfy element three-expectation of compensation for Liddle's legal services.  (See id. ¶¶ 5-12 & Exs. A-D.)  The multiple bills mailed by Liddle to Luby and Garrett also manifest Liddle's expectation of compensation for legal services.  (See id. ¶¶ 14, 16, 21-24.)  Further

11

reinforcing Liddle's expectation of compensation is Liddle's letter to Luby and Garrett dated February 8, 2002, expressly asserting defendants' ongoing responsibility for the attorneys' fees stipulated in the parties' retainer agreements.  (See id. ¶ 20 & Ex. E.)  Finally, Liddle pleads element four-the reasonable value of its legal services to Luby and Garrett.  Liddle enumerates the dollar amounts of each bill mailed to Luby and Garrett, thereby sufficiently stating the value of its legal services.  (See id. ¶¶ 14, 16, 21-24.)

Luby and Garrett contend that Liddle's resignation precludes any form of recovery; however, whether Liddle was terminated or resigned unilaterally is a factual dispute that is not appropriate for resolution on this motion to dismiss.  See DiBlasio v. Novello, 344 F.3d 292, 304 (2d Cir. 2003) (holding that "a disputed issue of fact . . . is inappropriate to consider in the context of a Rule 12(b)(6) motion"); DeLuca v. AccessIT Group, Inc., -- F. Supp. 2d --, 2010 WL 447114, at *7 (S.D.N.Y. 2010) (Leisure, J.) (same); Banks v. Correctional Servs. Corp., 475 F. Supp. 2d 189, 195 (E.D.N.Y. 2007) (stating that, on a Rule 12(b)(6) motion, "[t]he Court's task 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof'" (quoting Levitt v. Bear Stearns & Co., Inc., 340 F.3d 94, 101 (2d Cir. 2003))); Yajure v. DiMarzo, 130 F. Supp. 2d

568, 571-72 (S.D.N.Y. 2001) ("The role of a district court in
considering a motion to dismiss is not to weigh the evidence
that might be presented at trial but merely to determine whether
the complaint itself is legally sufficient." (citation and
internal quotation marks omitted)).  The Court, therefore,
cannot and will not address this factual dispute and, instead,
"assume[s] the[] veracity" of Liddle's allegation that it was
terminated without cause.  Iqbal, 129 S. Ct. at 1950; see also
Am. Compl. ¶ 19.

For the foregoing reasons, Liddle pleads in its Amended
Complaint factual allegations that plausibly give rise to an
entitlement to relief for quantum meruit under New York law.
See Iqbal, 129 S. Ct. at 1950; Selevan, 584 F.3d at 88.
Therefore, Luby's and Garrett's motion to dismiss Liddle's cause
of action for quantum meruit is denied.


## III. Breach of Contract

Liddle's third and fourth causes of action plead claims for
breach of contract against Garrett and Luby, respectively, for
damages in the amount of $38,934.26 for Garrett and $13,687.72
for Luby, in addition to the contingency fees provided in each
defendant's retainer agreement.  (Am. Compl. ¶¶ 32-35.)  Luby
and Garrett contend that Liddle cannot maintain its causes of
action for breach of contract and account stated because there

are only three remedies available to an attorney discharged without cause to recover the value of his legal services-the charging lien,[2] retaining lien,[3] and quantum meruit.  (Defs.' Mem. 5.)  Luby and Garrett are correct that an attorney who is discharged without cause is limited to these three remedies to recover attorneys' fees.  See Schneider, Kleinick, Weitz, Damashek & Shoot v. City of N.Y., 754 N.Y.S.2d 220, 223, 302 A.D.2d 183 (App. Div. 2002) ("An attorney who is discharged without cause has three remedies to recover the value of his or her legal services:  the retaining lien, the charging lien, and the plenary action in quantum meruit."); Butler, Fitzgerald & Potter v. Gelmin, 651 N.Y.S.2d 525, 527, 235 A.D.2d 218 (App. Div. 1997) (listing quantum meruit, charging lien, and retaining lien as the "three separate and distinct remedies which are available to a discharged attorney to recover the value of his legal services").  Here, where Liddle does not assert claims for a charging lien or a retaining lien, Luby and Garrett argue that "New York law permits exclusively a quantum meruit claim." (Defs.' Mem. 1 (emphasis in original).)

---

[2] A charging lien is "a lien against any judgment or settlement in favor of the client in an action in which the discharged attorney formerly was the attorney of record for the client." Butler, Fitzgerald & Potter v. Gelmin, 651 N.Y.S.2d 525, 527, 235 A.D.2d 218 (App. Div. 1997); see also N.Y. Judiciary Law § 475.

[3] "Under New York law, a retaining lien entitles an attorney to keep, as security against payment of fees, all client papers and property, including money, that come into the attorney's possession in the course of employment, unless the attorney is discharged for good cause." Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir. 1991); see also Casper v. Lew Lieberbaum & Co., Inc., No. 97 Civ. 3016, 1999 WL 335334, at *8 (S.D.N.Y. May 26, 1999).

A. Legal Standard

   To state a claim for breach of contract under New York law,
a plaintiff must plead "'(1) a contract; (2) performance of the
contract by one party; (3) breach by the other party; and (4)
damages.'" Rosenblatt v. Christie, 195 F. App'x 11, 12 (2d Cir.
2006) (quoting Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522,
525 (2d Cir. 1994)); see also Madu, Edozie & Madu, P.C. v.
SocketWorks Ltd. Nig., 265 F.R.D. 106, 125 (S.D.N.Y. 2010)
(Leisure, J.).


B. Application

   The Court holds that Liddle does not properly state a
breach of contract claim.  Liddle declares in its Amended
Complaint that it was discharged without cause, stating that
Luby and Garrett "terminated or constructively terminated
[Liddle's] representation of them."  (Am. Compl. ¶ 19.)  In an
action for the recovery of attorneys' fees pursuant to a
contingency fee agreement, after a client has discharged an
attorney without cause, New York law permits a quantum meruit
claim.  See Universal Acupuncture Pain Servs., P.C. v. Quadrino
& Schwartz, P.C., 370 F.3d 259, 263 (2d Cir. 2004) ("'Recovery
on a quantum meruit basis is called for . . . where the attorney
discharged without fault was employed under a contingent fee

15

contract.'" (quoting Smith v. Boscov's Dep't Store, 596 N.Y.S.2d 575, 576, 192 A.D.2d 949 (App. Div. 1993))); Martens v. BOCES, Bd. of Coop. Educ. Servs., No. 97 Civ. 684, 1999 WL 294801, at *1 (S.D.N.Y. May 11, 1999) (Chin, J.) ("An attorney discharged without cause may recover fees only on a quantum meruit basis even where the attorney was retained on a contingency fee basis."); Campagnola v. Mulholland, Minion & Roe, 76 N.Y.2d 38, 40, 44, 555 N.E.2d 611 (1990) (holding that in the context of a contingency fee agreement for one third of the client's recovery, "[w]here [an attorney's] discharge is without cause, the attorney is limited to recovering in quantum meruit the reasonable value of the services rendered"); Teichner by Teichner v. W & J Holsteins, Inc., 64 N.Y.2d 977, 979, 478 N.E.2d 177 (1985) (holding that pursuant to a contingency fee agreement, "[i]f the discharge [of an attorney] is without cause before the completion of services, then the amount of the attorney's compensation must be determined on a quantum meruit basis"); Byrne v. Leblond, 811 N.Y.S.2d 681, 683, 25 A.D.3d 640 (App. Div. 2006) (holding that in the context of a contingency fee agreement for one third of the client's recovery, "[a]s against the client, where the discharge is without cause the outgoing attorney is limited to recovering in quantum meruit the reasonable value of the services rendered").

16

The cases above involve exclusively contingency fee agreements and, as Liddle correctly asserts, there do not appear to be any cases discussing the remedies available to an attorney seeking unpaid fees pursuant to a blended contingency and hourly fee agreement. (See Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Pl.'s Am. Compl. 8.)  In the absence of a definitive ruling by the highest court of a particular state, a district court should predict what the highest state court would decide when faced with an undecided issue of state law. See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 415 F. Supp. 2d 261, 268 (S.D.N.Y. 2005).  Specifically, "the role of the federal court is to 'construe and apply state law as [it] believe[s] the state's highest court would, not to adopt innovative theories that may distort established state law.'" Id. (quoting City of Johnstown, N.Y. v. Bankers Standard Ins. Co., 877 F.2d 1146, 1153 (2d Cir. 1989)); see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos., Inc., 265 F.3d 97, 106 (2d Cir. 2001).

The Court finds sufficient guidance from the New York courts to hold that here, where an attorney allegedly discharged without cause seeks unpaid legal fees pursuant to a blended contingency and hourly fee agreement, New York's highest court would find, as this Court does, that the attorney is limited to seeking relief in quantum meruit.  As discussed above, New York

17

courts hold that, after being discharged without cause pursuant to a contingency fee retainer, an attorney can bring only a quantum meruit claim to recover attorneys' fees.  New York courts also have found that an attorney is limited to quantum meruit recovery when his compensation is based exclusively on a retainer for hourly fees.  See Seth Rubenstein, P.C. v. Ganea, 833 N.Y.S.2d 566, 567, 569, 41 A.D.3d 54 (App. Div. 2007) (affirming trial court's dismissal of attorney's breach of contract claim and holding that an attorney who had an oral retainer with his client for hourly compensation could seek recovery of attorneys' fees solely on a quantum meruit basis after being discharged without cause); Sae Hwan Kim v. M & Y Gourmet Grocers, 657 N.Y.S.2d 167, 168, 239 A.D.2d 170 (App. Div. 1997) (holding that retainer agreement specifying hourly rate of compensation in the event of discharge without cause was unenforceable and attorney was limited to recovery in quantum meruit).  This Court also is guided by the principle expounded by the New York Court of Appeals that once a client cancels a retainer contract, the retainer's "terms no longer serve to establish the sole standard for the attorney's compensation" but may "be taken into consideration as a guide for ascertaining quantum meruit."  Matter of Tillman, 259 N.Y. 133, 135, 181 N.E. 75 (1932); see also Lai Ling Cheng v. Modansky Leasing Co., Inc., 73 N.Y.2d 454, 457-58, 539 N.E.2d 570 (1989) ("When a

client discharges an attorney without cause, the attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in the contract or retainer agreement.").

Limiting the available remedy for an attorney discharged without cause in the context of a mixed hourly and contingent fee agreement to quantum meruit is consistent with the nature of the attorney-client relationship. Because a client "has the implied right to terminate the attorney-client relationship at any time, with or without cause, . . . premature termination is not an actionable breach [of contract]." Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc., 20 F. Supp. 2d 645, 649 (S.D.N.Y. 1998); see also Realuyo v. Diaz, No. 98 Civ. 7684, 2000 WL 307407, at *3 (S.D.N.Y. Mar. 23, 2000) (Koeltl, J.) ("[E]ven where the client has entered a retainer agreement, '[c]ancellation by him cannot constitute a breach of contract, for implied in every such agreement is the right to discharge.'" (quoting In re Krooks, 257 N.Y. 329, 331, 178 N.E. 548 (1931))). Pursuant to its task to "construe and apply state law as [it] believe[s] the state's highest court would," Johnstown, 877 F.2d at 1153, this Court predicts that the New York Court of Appeals, if presented with a blended contingency and hourly fee agreement as exists between Liddle and the defendants, would limit Liddle

19

to a quantum meruit claim for the recovery of attorneys' fees.
Liddle, therefore, is foreclosed from bringing a breach of
contract claim as a remedy for allegedly being discharged
without cause by Luby and Garrett.

For the foregoing reasons, Liddle fails to plead in its
Amended Complaint factual allegations that plausibly give rise
to an entitlement to relief for breach of contract under New
York law.  See Iqbal, 129 S. Ct. at 1950; Selevan, 584 F.3d at
88.  Therefore, Luby's and Garrett's motion to dismiss Liddle's
cause of action for breach of contract is granted.


**IV.  Account Stated**

Liddle's fifth and sixth causes of action plead claims for
account stated against Garrett and Luby, respectively, for
"legal services at the time those services were performed" in
the amount of $38,934.26 for Garrett and $13,687.72 for Luby.
(Am. Compl. ¶¶ 36-41.)


A. Legal Standard

To properly assert an account stated claim under New York
law, a plaintiff must plead that "(1) an account was presented,
(2) it was accepted as correct, and (3) debtor promised to pay
the amount stated."  Camacho Mauro Mulholland LLP v. Ocean Risk
Retention Group, Inc., No. 09 Civ. 9114, 2010 WL 2159200, at *2,

(S.D.N.Y. May 26, 2010); IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (Preska, C.J.); Leepson v. Allan Riley Co., Inc., No. 04 Civ. 3720, 2006 WL 2135806, at *4 (S.D.N.Y. July 31, 2006); accord LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999) (holding that an account stated claim "requires 'an agreement between the parties to an account based upon prior transactions between them'" (quoting Chisholm-Ryder Co., Inc. v. Sommer & Sommer, 421 N.Y.S.2d 455, 457, 70 A.D.2d 429 (App. Div. 1979))).  "[A] claim for an account state[d] requires evidence that the debtor accepted, either explicitly or by his actions, the account as being correct."  Exp. Dev. Can. v. Elec. Apparatus & Power, L.L.C., No. 03 Civ. 2063, 2008 WL 4900557, at *16 (S.D.N.Y. Nov. 14, 2008).  The latter two elements-acceptance as correct and a promise to pay the amount stated-are implied where a defendant receives and retains invoices without objecting to them in a reasonable period of time.  See Leepson, 2006 WL 2135806, at *4; see also LeBoeuf, 185 F.3d at 64 (explaining that acceptance "may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment" (citation and internal quotation marks omitted)); Eastside Food Plaza, Inc. v. "R" Best Produce, Inc., No. 03 Civ. 106, 2003 WL 21727788, at *4 (S.D.N.Y. July 23, 2003) ("An account stated may

be implied when a creditor sends a statement of an account to a debtor and the debtor . . . keeps it for a reasonable time without objecting to the correctness of the account.").

## B. Application

The Court holds that Liddle's Amended Complaint does not plead properly an account stated claim.  For the reasons discussed above, Liddle can bring only a quantum meruit claim to recover attorneys' fees after allegedly being discharged without cause by Luby and Garrett.  While several Second Circuit, Southern District, and New York Court of Appeals cases have allowed a law firm to bring an account stated claim to recover attorneys' fees, these cases do not involve an attorney who was discharged by his client without cause.  See, e.g., LeBoeuf, 185 F.3d at 63 (client failed to pay legal fees but never discharged attorney); Camacho, 2010 WL 2159200, at *2 (law firm terminated relationship with client); Leepson, 2006 WL 2135806, at *1-2 (client failed to pay legal fees but never discharged attorney); Darby & Darby, P.C. v. VSI Int'l, Inc., 95 N.Y.2d 308, 311, 739 N.E.2d 744 (2000) (client failed to pay legal fees and attorney subsequently ended relationship with client).  Because an account stated claim for the recovery of attorneys' fees is not actionable where an attorney is discharged without cause, as

Liddle alleges it was, Liddle is limited to seeking relief under a theory of quantum meruit.

For the foregoing reasons, Liddle fails to plead in its Amended Complaint factual allegations that plausibly give rise to an entitlement to relief for account stated under New York law.  See Iqbal, 129 S. Ct. at 1950; Selevan, 584 F.3d at 88. Therefore, Luby's and Garrett's motion to dismiss Liddle's cause of action for account stated is granted.

The Court denies Liddle leave to replead on the grounds that granting leave to file a Second Amended Complaint would be futile since Liddle is precluded, as a matter of law, from asserting a cause of action outside of quantum meruit.

## CONCLUSION

For the foregoing reasons, Luby's and Garrett's motion to dismiss Liddle's Amended Complaint for failure to state a claim under Rule 12(b)(6) is DENIED IN PART and GRANTED IN PART. Luby's and Garrett's motion to dismiss Liddle's first and second causes of action for quantum meruit is DENIED.  Luby's and Garrett's motion to dismiss Liddle's third, fourth, fifth, and sixth causes of action for breach of contract and account stated is GRANTED.  Liddle is DENIED leave to file a Second Amended Complaint on the grounds of futility.  The parties are ordered to appear for a telephonic pre-trial conference on July 13, 2010, at 11 a.m.  Chambers will provide counsel with calling instructions after the filing of this Opinion and Order.

**SO ORDERED.**
**New York, New York**

June **30**, 2010

_____

U.S.D.J.


Copies of this Opinion and Order have been e-mailed to:

James A. Batson
Liddle & Robinson, LLP
800 Third Avenue
New York, NY 10022

Thomas M. Mullaney
Law Offices of Thomas M. Mullaney
708 Third Avenue, Suite 2500
New York, NY 10017